568 A.2d 228

**COMMONWEALTH of Pennsylvania**

**v.**

**Joseph P. MILLER, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1989.

Filed Jan. 8, 1990.

Joseph J. Marinaro, Philadelphia, for appellant.

Kathy Echternach, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before McEWEN, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from the judgment of sentence for appellant's convictions of third degree murder, aggravated

assault, criminal conspiracy and possession of an instrument of crime. He was sentenced to an aggregate term of imprisonment of ten to thirty years. Appellant was jointly tried by a jury with his father, Joseph Miller, Sr., and Ernest Colding.[1]

The evidence produced at trial shows that at the time of the incident appellant and his co-defendants lived at 910 North 29th Street in Philadelphia and the victim lived at 912 North 29th Street. Appellant and his father had a history of quarreling with the victim's household (which included a nephew of Joseph Miller, Sr.) requiring police intervention. On August 1, 1986 appellant and co-defendants sent their children away from the house and armed themselves with guns. That night, after an argument, the victim Eric Levetter, along with Kenneth Miller, Marlon Burton (Kenneth's thirteen year old son), and Walter Johnson walked over to appellant and his co-defendants who were sitting on their front steps. As Levetter and his cohorts approached, Joseph Miller, Sr. passed a gun to appellant, his son, who shot Kenneth Miller in the thigh. As Kenneth retreated, Ernest Colding opened fire on the unarmed Levetter as he attempted to get away. Levetter fell in front of his house and Colding shot him repeatedly as he tried to get up, one bullet entering his hand when he held it up to protect himself.

Prior to trial, a suppression hearing was held on appellant's motion to suppress statements he had made to George J. Shotzbarger, assistant district attorney. On September 18, 1986, appellant called Shotzbarger's office and left a message for him to return the call. Shotzbarger did so and appellant expressed the desire to get his father out of jail. In the course of the conversation, appellant, after being given his rights, told Shotzbarger that Joseph Miller,

1. Colding was convicted of first degree murder and sentenced to life imprisonment. This Court affirmed the judgment of sentence (No. 717 Philadelphia, 1988) and the Supreme Court denied the petition for allocatur (No. 18 E.D. Allocatur Docket 1989). Joseph Miller, Sr., was acquitted on all charges.

Sr. was innocent and that he (appellant) and Colding were the only ones with weapons.

Appellant claims he and Shotzbarger discussed possible plea agreements and, therefore, appellant's statements from this conversation should be suppressed. Since trial counsel failed to raise this argument at the suppression hearing, appellant claims his counsel was ineffective. Trial counsel did raise the failure of counsel to be present during the telephone conversation saying that should result in suppression of the conversation.[2] It is only on appeal that appellate counsel shifts the theory for suppressing the statement alleging counsel's ineffectiveness in failing to base a suppression claim on the plea bargain theory. The Commonwealth claims the record is clear appellant and Shotzbarger were *not* engaged in plea bargaining; therefore, counsel was not ineffective for failing to pursue this theory.

> The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

**2.** While appellant raises the ineffectiveness claim in the argument section of his brief, his statement of questions only alleges trial court error in failing to grant the suppression motion based upon the alleged right to counsel violation. This issue is waived, however, as appellant fails to argue it in his brief. *See Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988). In any event, we have reviewed the issue and find it to be without merit.

*Commonwealth v. Durst,* 522 Pa. 2, 4–5, 559 A.2d 504, 505 (1989).

Thus we must first ascertain whether the conversation between appellant and Shotzbarger amounted to plea bargaining.

> Initially, ... it must be determined in such cases whether or not the statement or statements made by an accused are in connection with plea negotiations. *U.S. v. Robertson,* 582 F.2d 1356 (5th Cir.1978) provides a workable analytical framework to determine the appropriate characterization:
>
>> ... first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and second, whether the accused's expectation was reasonable given the totality of the objective circumstances. *Id.* at 1366.
>
> Of primary importance in assessing an accused's subjective expectation of negotiating a plea is whether the Commonwealth showed an interest in participating in such discussions. In line with this reasoning, voluntary, unsolicited statements uttered by an accused to authorities cannot be said to be made in furtherance of striking a plea bargain.

*Commonwealth v. Calloway,* 313 Pa.Super. 173, 184–85, 459 A.2d 795, 800–01 (1983).

Our review of the testimony elicited during the hearing on the suppression motion leads us to find appellant's statements were not made in the course of plea negotiations.

The call from appellant was returned by Mr. Shotzberger who, before any discussion, advised appellant he should say nothing and should have his attorney present, which the assistant district attorney would arrange, perhaps by conference call. He was also informed that if he continued, anything he said could and would be used against him in court. Appellant's response was, "Well, I don't care about that. What I want to do is I want to get something off my chest." He went on to say his father was innocent and he

(appellant) shot two guys and "Codeine [sic] did it too." (S.T. 5/18/87, pp. 56–57.) From this point the conversation segued into a discussion of taking the matter up with appellant's counsel and what procedures would follow to pursue that aspect of the case. The statement at that point was clearly admissible as a voluntary statement, which was inculpatory and in conflict with a previous statement denying culpability. The entire initial aspect of the conversation was focused on appellant getting his father out of jail and shifting responsibility for the actual shooting from his father to himself. Thus, the requirement espoused by *Calloway, supra,* that the accused exhibit an actual subjective expectation of plea negotiation and that such an expectation was reasonable, has not been met.

The discussion of a possible plea came only later in the conversation when Mr. Shotzberger informed appellant that if he was found to be the shooter, he faced a possible life sentence or death by electrocution (S.T. at 60–61). The conversation then turned to possible plea negotiations. The subsequent discussion of possible plea negotiations does not taint the voluntary unsolicited statements uttered by the accused as those statements were not made with the expectation of furthering a plea bargain.

Under this set of circumstances, *Calloway,* cited by appellant, does not apply because the admission was not in furtherance of a plea bargain, but a voluntary admission, following Miranda warnings, which subsequently lead to discussion about the procedure to be followed to arrange for negotiating a plea bargain. *Calloway* refers, in dicta to Federal Rules of Evidence 410, Inadmissibility of pleas, plea discussions and related statements, as guidance in this area. That rule does not aid appellant but makes it clear that this situation is excluded from the rule.

Federal Rule 410 clearly relates to an admission entered into as part of the plea bargain negotiations, not to an admission which thereafter led to a discussion of how plea negotiations could be pursued at a later time. As such, there is no chilling effect on plea negotiations alluded to in

*Calloway.* It is only those admissions arising out of and inherent in the plea discussion which are protected by the theory that to permit their admission in evidence at trial, if negotiations fail or the plea is withdrawn, would be to place a chilling effect on such discussions. That rationale does not apply here and to permit it would be to paralyze legitimate interchange between the district attorney and persons charged with a crime. A balance must be retained between reasonable intercourse between the prosecutor and a defendant and protection of a defendant seeking to explore a settlement. Appellant's belated allegation of ineffectiveness of counsel in this case, under these facts, would alter that balance impermissibly in favor of appellant.

Appellant does not allege that trial counsel's suppression argument was without reasonable basis but instead, alleges counsel chose to pursue the wrong argument and should have based his suppression motion on the fact that the statements were made during plea bargaining. As we said earlier, that argument is without merit. The argument we have under discussion is properly reviewable as having been advanced at the earliest possible time by new counsel. "The test for competency 'is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record', but whether counsel's assessment of appellant's case and his advice were reasonable." *Commonwealth v. Vesay,* 318 Pa.Super. 320, 326, 464 A.2d 1363, 1366–67 (1983), quoting *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352–53 (1967). We find trial counsel's course of action and assessment of appellant's case were reasonable and, therefore, find this ineffectiveness claim is without merit. It cannot be said that the claim now presented by appellate counsel was one which reasonably should have been presented at the suppression hearing.

Appellant's second and final argument is the case should have been dismissed due to a violation of Pa.R. Crim.P. 1100 which required that trial was to occur no later than 180 days after the criminal complaint was filed. Un-

der this rule, appellant contends the last date for trial to commence was February 1, 1987, however, trial did not commence until May 19, 1987.[3] The Commonwealth and the trial court both advise that the delay occurred due to the unavailability of any of the homicide judges and the Commonwealth was forced to request an extension of time even though the case had been in the "ready pool" for two months. Since the Commonwealth has shown it was ready for trial, the extension was properly granted due to judicial delay. *See Commonwealth v. Bogan*, 355 Pa.Super. 32, 512 A.2d 1194 (1986) (judicial delay provides a basis for granting a petition to extend where the Commonwealth shows due diligence in getting the case to trial at the earliest possible date).

Judgment of sentence affirmed.

---

3. The trial court sets the date as May 26, 1987. *See* Slip Op., Durham, J., p. 4.